In the Matter of the Estate of GILMORE T. ERIKSON, Deceased

Probate No. 72-14

District Court of the Virgin Islands

Div. of St. Croix

November 7, 1974

31

YOUNG, *District Judge*

MEMORANDUM OPINION AND ORDER

SUR REVIEW OF REJECTION OF CREDITOR'S CLAIM

The claimant, Leonard Erikson (herein "Leonard"), father of decedent, Gilmore Erikson (herein "decedent") filed a claim against decedent's estate for money that he loaned decedent at various times over a period of years. The administratrix (decedent's widow) rejected Leonard's claim for inadequate proof and the running of the statute of limitations. Leonard thereupon presented his claim to this Court pursuant to 15 V.I.C. 395.

There are essentially five elements to Leonard's claim. In addition, the question whether there was an agreement to consolidate into a single debt all of decedent's debts to Leonard is one of the disputes to be resolved. Leonard provided money from time to time that decedent used in establishing himself in business on St. Croix. Typical of intra-family finances, record-keeping was haphazard and many things were ambiguous. The first element involves $2,500.00 that was lost in the failure of decedent's car rental company financed in part by Leonard. Next, there was a series of loans which resulted in a memorandum of September 22, 1962 signed by both parties, acknowledging a debt of $10,000 owed to Leonard. While none of the notes that were drawn when Gilmore originally received the money carried any interest, this "acknowledgment" called for interest at the rate of 6%. The third element consists of three non-interest bearing notes totalling $4,000 drawn after the Sep-

tember 22, 1962 memorandum. The fourth element consists of $2,000.00 for interest accrued as of December, 1963, listed in the "Gallows Bay Agreement". Finally, Leonard in 1970 sold to decedent stock in a company managed by decedent. Leonard alleges the sale price was $19,750.00, $10,000.00 of which was paid, leaving $9,750.00 owing at decedent's death.

■ The administratrix argues that the advances made by Leonard to decedent were gifts rather than loans. The weight of the evidence is against this contention; in fact, there is no evidence to support it. The course of dealings between the parties is inconsistent with any intent on the part of Leonard to treat these transfers as gifts. Decedent signed a series of notes with Leonard as payee. In correspondence with Leonard, decedent mentioned repaying his father's investment in one venture and paying interest on the rest of the indebtedness. Decedent paid interest on the debt owned Leonard from 1968 until 1971. The Court finds the transfer of funds to have been in the form of loans and not gifts.

Leonard asserts that he and decedent had an oral agreement consolidating all of the debts and thus his claim is a single claim. Before reaching that contention, I will treat several items separately.

■ Claimant's Exhibit 1–3 are three demand notes drawn June 15, 1963, November 1, 1963 and November 30, 1963 for $2,000, $1,000 and $1,000 respectively. There is no evidence that Leonard ever made a demand for payment of these notes. There being no demand and dishonor, no cause of action accrued; hence this claim is not barred by the Statute of Limitations. These notes are valid claims against the estate.

■ In September, 1962, Leonard bought $8,000 of stock in Christiansted Port Terminal Corporation which

was held in the name of decedent. In December, 1963, the "Gallows Bay Agreement" was drafted. It is in decedent's handwriting and was found in his files, but it is not signed. It provides as follows:

| | | |
|---|---:|---:|
| Estimated Gallows Bay Value | | $50,000.00 |
| Deductions to be made before figuring profit. | | |
| Original invest | $ 8,000.00 | |
| Original Debt | 10,000.00 | |
| New Debt | 4,000.00 | |
| Loss on car rental | 2,500.00 | |
| Bank interest estimated | 2,000.00 | |
| | | 26,500.00 |
| Split Profit | | 23,500.00 |
| Each Share | 11,750.00 | |
| Gil Owes on vending | 5,000.00 | |
| | | $ 6,750.00 |

While the value of the stock in the future is speculative, the fact that the sales price of $19,750.00 for the Port Terminal stock asserted on Leonard's 1970 tax return equals the original investment plus Leonard's share of expected profits tends to support Leonard's claim. This is buttressed by the fact that the value of the stock at the time of the sale in mid-1970 by Leonard to decedent was considerably more than the $3.37 per share price. At that time, its value was more like $10.00 per share as evidenced by the sale in March, 1971 of the stock to a third party for $10.00 per share. Decedent's treatment in his 1970 tax return of the payment of $10,000 as interest may be of interest accounting-wise, but does not seriously counter Leonard's claim. Therefore, I find that the sale price of the Port Terminal Stock to have been $19,750.00, $9,750.00 of this price is still owing and is a valid claim against the estate.

■ The administratrix objected to the admissibility of the "Gallows Bay Agreement" into evidence as hearsay.

Since the "Agreement" is in the decedent's handwriting and was found in his files, it is sufficiently authenticated. The use of the "Agreement" to corroborate Leonard's claim that the sale price was $19,750.00 is hearsay, but it comes within the state of mind exception since it relates to what the decedent was planning to do in the future i.e. buy back the stock or cause it to be sold to a third party at a profit of $11,750 to Leonard.

■■ On September 22, 1963, Leonard and the decedent executed a memorandum, signed by both parties, which consolidated the decedent's past due debts. The terms of the debt were altered by the memorandum—the consolidated debt was to carry interest at the rate of 6% per annum payable semi-annually and payments of principal were to be made at the discretion of the borrower. The provision for discretionary payments will be ignored since that provision destroys any mutuality of obligation. Hence, the obligation becomes a demand note. Although interest payments were made at various times, no payment appears to have been made on principal. However, I find the debt was never in default since there was no demand and dishonor; therefore, the limitations period never commenced to run against this claim. This $10,000 claim is also valid on another theory. Even if the limitations had commenced to run, the interest payments in 1968, 1969 and 1970 were acknowledgments of the indebtedness and the limitation period commences from the last payment made. Therefore, this claim was not barred by the statute of limitations at the time of decedent's death.

■ There are two items remaining in Leonard's claim —the $2,500.00 loss he incurred in the decedent's car rental business and $2,000.00 of interest mentioned in the "Gallows Bay Agreement". Any claim for losses incurred in the

35

car rental business accrued more than six years prior to decedent's death and is barred by the statute of limitations.

■ Unless there was a consolidation of all the decedent's indebtedness and it included this item (see below), there is insufficient evidence to support the claim for $2,000.00 for interest. The decedent's debts that were consolidated in the September 22, 1962 memorandum had been non-interest bearing. The consolidated debt of $10,000.00 carried 6% interest per annum as of December, 1963, the date of the "Gallows Bay Agreement" resulting in an interest accrual of $750.00.

Leonard argues that all of the decedent's indebtedness was consolidated again into a single debt presumably in December, 1963, and that the 1968, 1969 and 1970 interest payments are acknowledgments of the debt raising the bar of the statute of limitations. This position does not run afoul of the Statute of Frauds, 28 V.I.C. § 244(1), though there is no agreement in writing, because the alleged consolidation was an agreement which could have been performed within a year despite the improbability of that occurring.

This alleged consolidation must be rejected for lack of evidentiary support. Callwood v. Virgin Islands National Bank, 221 F.2d 770 (3rd Cir. 1955) interpreted 15 V.I.C. 395 as making the claimant incompetent to testify on a claim against an estate. That interpretation was overruled by the adoption of the Uniform Rules of Evidence in the Virgin Islands which eliminates all testimonial disqualifications of witnesses not contained in Chapter 67 of Title 5. 5 V.I.C. § 777. However, 15 V.I.C. 395 also establishes an evidentiary rule that the testimony of the claimant on a claim rejected by the executor or administrator must be corroborated by other satisfactory evidence. There is insufficient corroborating evidence to support a finding of a consolidation of all debts.

■ Leonard offers the "Gallows Bay Agreement" as corroborating evidence of a consolidation. As indicated above, the "Agreement" is hearsay, and it is being offered for a different purpose than before so it must come within another exception to the rule. Leonard is offering the "Agreement" as a declaration against the pecuniary interest of the decedent. The "Agreement" if interpreted as the claimant asserts, would be against the decedent's pecuniary interest when made; therefore, it is admissible as an exception to the hearsay rule. The "Agreement" lists items that represent advances to the decedent or on his behalf by Leonard at various times, but such a listing is equally consistent with consolidation as with non-consolidation. The 1968, 1969 and 1970 interest payments do not indicate that such payments were in recognition of a single debt. They may be construed as payment on several debt items. The agreement listed the original investment in the Port Terminal Stock as an item, but Leonard and the decedent did not treat this item as a debt. They treated the stock as beneficially owned by Leonard, and Leonard returned his gain on the sale of the stock as capital gains rather than interest income as he would have if the item were a secured loan. The testimony of Leonard would be persuasive that the debts were consolidated, but by law I cannot base my findings on his testimony alone. There is no other satisfactory evidence of consolidation to corroborate the claimant's testimony.

### ORDER

In accordance with my findings and the reasons in support thereof set forth in the foregoing Memorandum Opinion, it is hereby

ORDERED that the claim of Leonard Erikson against the Estate be allowed in the amount of $24,250.00.