# IN THE MATTER OF THE ESTATE OF BARBARA IRVIN McCONNELL, Deceased

Probate No. 21/1993

Territorial Court of the Virgin Islands

Division of St. Croix

February 25, 2000

ALBERT JOMO MEADE, Frederiksted, St. Croix, U.S. V.I., *for Estate*

GEORGE W. CANNON, JR., Frederiksted, St. Croix, U.S.V.I., *for Claimant*

STEELE, *Judge*

43

## MEMORANDUM OPINION

A creditor's claim has been filed with the Court by the Claimant, Virginia Irvin, in which she seeks repayment for various monetary disbursements she alleges to have made on behalf of the decedent, Barbara Irvin McConnell. The Claimant maintains that she had provided the decedent with funds in accordance with an oral agreement entered into by the parties. According to this alleged agreement, the Claimant was to receive either an equitable interest in the decedent's Queen Street property in the Virgin Islands, or would be repaid for the monies she had extended on her sister's behalf.

In rejecting the claim, the Estate raises three separate arguments as the basis for its refusal. The first of these arguments concerns the Statute of Frauds, while the last two question the decedent's capacity to contract and the apparent gratuitous nature of the expenditures. However, the Court need only address these defenses should it be determined that the Claimant has met the requisite burden of proof in regards to her claim.

## I. FACTUAL BACKGROUND

The Claimant is the sister and sole sibling of the decedent. Though the nature and extent of this relationship was not directly addressed at the hearing, it is uncontroverted that the Claimant did in fact provide the decedent with monetary assistance for some years prior to her death. What is being disputed is the amount of funds actually received, as well as the intent of the parties in regards to the disbursements.

The decedent died testate October 31, 1992 on the Island of St. Croix, having been a resident of the Territory at the time of her demise. Along with several items of personal property, the decedent died possessed of real estate located at 44B and 45 Queen Street, Frederiksted, St. Croix (hereinafter referred to as the Queen Street property). To dispose of this property, the decedent left behind a three page document dated January 10, 19992 (sic) which was entitled "Last Will and Testiment" (sic). In what can best be described by the Court as a rather unique, if not a somewhat scathing instrument, the decedent in effect disinherited all of her

44

then living relatives.[1] Nonetheless. no family member filed an opposition or contest with the Court, and the testament was admitted to probate on January 11, 1994, with Charles J. Hohmeier being appointed as the executor of the Estate.

On March 15, 1994, the Claimant presented the Court with her creditor's claim against the Estate. Specifically, she sought $34,541.95 for mortgage, tax, electricity, telephone, medical and miscellaneous expenses she alleges to have paid on behalf of the decedent. The Executor eventually disallowed this claim on March 29, 1996, having expressly done so in his one and only accounting of the Estate's administration. Soon after the filing of this report however, the Executor himself passed away, and the Court appointed a member of the Virgin Islands Bar to both administer and act as legal counsel for the Estate.[2]

Due to poor health, the Claimant requested that her telephonic deposition be utilized at trial in lieu of her actual presence. At the hearing, the Estate raised no opposition to this request, and the deposition was read into the record in its entirety. Further evidence was offered by the Claimant in the form of canceled checks and a notebook allegedly maintained by the Claimant which chronicled her care and monetary assistance to the decedent. Although none of this additional material was in its original form, the Estate made no objection as to its admissibility, and thus it was therefore admitted into evidence by the Court.

## II. DISCUSSION

■ Both the Estate's Executor and its subsequent Administrator have rejected the claim filed against it by the Claimant. Believing this administrative decision to be erroneous, the Claimant has requested that a judicial determination be made as to the validity of the debt. The burden in such an action rests solely with the Claimant, as she must provide the Court with the necessary evidence to prove her claim. Even if sufficient proof has been

---

[1] Pursuant to the testament, the decedent's sister, nephew and two nieces were to each receive the sum of one dollar.

[2] Current counsel for the Estate, Albert Jomo Meade, was appointed as both the attorney and administrator for the Estate by the Court on August 9, 1996.

presented, the Claimant will still need to overcome the issues raised by the Estate involving the Statute of Frauds, capacity, and intent. For the reasons to follow in this Opinion, the Court finds that the Claimant has partially met her burden and is therefore entitled to a portion of her claim from the Estate.

## A. Judicial Determination of Claim

The standard for judicial review of rejected creditor's claims in probate matters is set forth in 15 V.I.C. § 395.[3] Pursuant to this code section, no claim rejected by an estate's executor or administrator may be subsequently allowed by the Court based on the testimony of the claimant alone. V.I. Code Ann. tit. 15, § 395 (1996). Such testimony requires the corroboration of some additional competent or satisfactory evidence. V.I. Code Ann. tit. 15, § 395 (1996); In re Estate of Erikson, 1974 U.S. Dist. LEXIS 5911, 11 V.I. 30, 36 (D. VI 1974).

■ It is quite evident from the language utilized in 15 V.I.C. § 395, that a claimant's testimony by itself will not suffice to validate a rejected claim against an estate. What is not so readily apparent is the exact extent to which this testimony must be supported by additional "competent or satisfactory evidence," A close scrutiny of the code section however appears to answer this query. The Legislature's decision to use the words "upon some," immediately preceding "competent or satisfactory evidence" strongly suggests to the Court that a claimant need only provide some form of competent or satisfactory evidence other than his or her own testimony to maintain an action involving a rejected claim. Upon the claimant accomplishing this task, it is then the duty of the Court to weigh the evidence presented and determine whether or not to allow the claim.

---

[3] The pertinent portion of this code section provides that:

. . . No claim which has been rejected by the executor or administrator as aforesaid shall be allowed by the court, except upon some competent or satisfactory evidence other than the testimony of the claimant. No claim shall be allowed by the executor or administrator or the district court which is barred by the statute of limitations.

V.I. Code Ann. tit. 15, § 395 (1996).

Turning to the case at hand, the Claimant made her testimony available to the Court in the form of a brief telephonic deposition. A copy of a notebook was produced which the Claimant allegedly maintained to chronicle her varied assistance to the decedent. Finally, photocopies of fifty-five (55) canceled checks[4] amounting to $22,706.64 were introduced into evidence, purportedly representing monies lent to the decedent.

According to the Claimant, she states that an understanding was reached between herself and the decedent in which the Claimant would provide assistance and in return receive either an equitable interest in the decedent's Queen Street property or be repaid for the payments made. When questioned whether the promise was ever reduced to writing, the Claimant did not know. She additionally could not recall the exact date the agreement originated, but thought that it might have occurred with the first mortgage payment check she provided for the decedent.

Though the deposition testimony offers little correlation to the canceled checks which were submitted into evidence, the Claimant's notebook provides the necessary nexus. The Court considers the notebook entries to be the additional testimony of the Claimant, as she was the individual who composed its text.[5] It is through this self-serving document however, that the Court can trace the purpose behind most of the checks.

"Satisfactory evidence" has been defined by *Black's Law Dictionary* as "[s]uch evidence as is sufficient to produce a belief that the thing is true: credible evidence." *Black's Law Dictionary* 1342 (6th ed. 1990). Applying this definition to the copies of canceled checks provided, the Court finds that the Claimant has complied with the code requirement of presenting satisfactory evidence other than her own testimony. Nonetheless, not all of these checks were

---

[4] The Claimant's bank sent her a notice informing her that one check was damaged, thus apparently preventing it from making a copy of the instrument. The bank did however list the amount and date of the check.

[5] In an unpublished opinion of the Territorial Court, a similar journal maintained by the claimant was treated as testimony. *Estate of Irvin v. McConnell,* slip op. (D. VI 1982). Interestingly enough, the claimant in that opinion was Barbara McConnell, and the deceased was her and the current Claimant's mother. Further intriguing is the similarities that the claim filed in the Irvin Estate shares with the one presently before the Court.

supported by testimony. Indeed, in some instances the Claimant's testimony or the content of the check actually contradicts her claim that she expected to be repaid for these expenditures.

Thirty-eight (38) of the checks were paid to Chase Manhattan Bank for the decedent's monthly mortgage obligation.[6] When totaled, the mortgage checks amount to $12,440.45, with the first of these checks being dated June 9, 1985. While the Claimant's motivation to assist the decedent most likely involved her desire in obtaining an equity interest in the Queen Street property, the evidence establishes that at the very least she expected reimbursement for the mortgage payments made. The fact that the Claimant maintained a record of her expenditures further supports this contention.

Surprisingly, neither party addresses that portion of the testament which actually deals with this subject. In the second paragraph of page two of this document, the decedent herself speaks of the mortgage agreement she had with the Claimant. In her own words, the decedent stated:

> Because of my sister's illegal and lethal actions toward me. (sic) she may neglect the agreement to pay off my small Mortgage on 44B Queen Street. The house at La Grange was Wiiled (sic) outright to me as noted in my Father's Will, my mother having only "Life use" My sister connived and paid to negate me, and in return when I was dying, promised to pay off my mortgage as a recognised (sic) debt. In the even (sic) that she fails, per uxual (sic) to live up to any signed agreement, it may be necessary to settle my Estate at it's own cost.

Although sufficient proof was provided at the hearing to validate the Claimant's claim concerning the mortgage payments, the Court believes an examination of this paragraph by the parties could have avoided litigation concerning this aspect of the claim.

The remaining seventeen (17) checks were for various different purposes. Three (3) checks were written prior to 1985, with each

---

[6] One of these checks was represented by a notice From the Claimant's bank that it had been damaged. However, the Claimant's notebook testimony established that this damaged check had been for a mortgage payment.

instrument providing a brief description as to the purpose of the payment. Two of these descriptions spoke of 66BB and 67A Queen, while the third listed only 67A Queen St. As nothing in the record reveals that any of this property was ever owned by the decedent, the Court shall not allow this portion of the claim. Furthermore, these payments were made prior to the first recorded mortgage payment in 1985, and thus would have occurred before the creation of the parties' agreement according to the testimony of the Claimant.

The June 6, 1986 check which was made payable to the decedent in the amount of$ 1,500.00 was described by the Claimant in her notebook as a "gift." The use of such language leads the Court to believe that the Claimant meant to give this money to the decedent without expectation of repayment. The notebook further states that the Franklin U.S. Government Securities account was in the Claimant's name, with only the dividends going to the decedent. Thus, the check made payable to Franklin U.S. Government Securities shall not be allowed as well. Finally, no evidence was given in support of the check made payable to John D. Merwin. This check was also written before 1985, and it too is denied as part of the valid claim.

The last eleven (11) checks amount to $5,338.09 and deal with miscellaneous expenses of the decedent. The claim submitted by the Claimant included a request to be reimbursed for this form of assistance, and the notebook chronicled all but one of these checks. As such, the Court finds that these payments were made in lieu of the parties agreement, thereby justifying the Claimant's request for repayment of the funds.

Exactly how the Claimant arrived at the final amount of $34,541.95 which she now seeks from the Estate is unknown to the Court. A tally of the expenses listed in the notebook reveals a much greater amount than this, while the canceled checks only total $22,706.64. Nevertheless, as no other satisfactory evidence was provided other than the copy of the checks, any amount greater than these instruments will not be considered by the Court.

## B. Proposed Defenses

The Estate raises three arguments in defense of its decision to reject the claim. The first of these arguments involves the Statute of

Frauds. Under the Statute of Frauds, a contract is void if it is not to be performed within one year from the date of its making, unless it has been evidenced by some note or memorandum in writing and subscribed by the party to be charged. V.I. Code Ann. tit. 28, § 244(1) (1996); *Birnbaum v. Zenda*, 15 V.I. 329, 342 (Terr. Ct. 1978). Arguably, such a written memorandum does exist in the form of the decedent's testament.

To suffice as a memorandum, there must be a writing signed by the party to be charged which reasonably identifies the subject matter, provides the essential terms of the unperformed promises, and indicates that the parties have entered into a contract. See RESTATEMENT (SECOND) OF CONTRACTS § 131 (1979).[7] When applying this standard to the second paragraph on page two of the decedent's testament, the Court does question whether the essential terms of the agreement were adequately set forth in the instrument. Nonetheless, it will not be necessary to resolve this query, as the Court finds that the doctrine of unjust enrichment would inevitably remove this case from the Statute of Frauds.

Unjust enrichment is an equitable remedy. *Flavor Pit of St. Thomas, Inc. v. Appleton*, 1988 U.S. Dist. LEXIS 18442 (D. VI 1988). It is typically invoked in quasi-contractual settings, where the plaintiff seeks to recover for a benefit he conferred unto the defendant under an unconsummated or void contract. *Steamfitters Local 420 v. Philip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999). A person unjustly enriched at the expense of another must make restitution. RESTATEMENT OF RESTITUTION § 1 (1936). If one confers upon another a benefit[8] so as to obtain the performance of a promise given, he shall be entitled to restitution if through a mistake of law he erroneously believed the promise to be binding upon him, and the benefit expected in return was not received. *See* RESTATEMENT OF RESTITUTION § 47 (1936). A party shall not be barred from restitution simply because the contract is unenforceable due to the Statute of Frauds, unless a statute provides otherwise or the purpose of the

---

[7] The Restatements of the Law are made applicable to the Virgin Islands pursuant to 1 V.I.C. § 4.

[8] To utilize this section of the Restatement, the benefit conferred must not be for the performance of services or the making of improvements to land or chattels of the other.

contract would be frustrated. *See* RESTATEMENT (SECOND) OF CONTRACTS § 375 (1979).

■ In this instance, the Court finds that the parties did indeed have an agreement in which the Claimant would provide financial assistance to the decedent in return for either an equitable interest in the Queen Street property or reimbursement for the payments made. This agreement is further evidenced by the content of the decedent's testament. As the decedent chose to neither bestow upon the Claimant an equitable interest in the real property nor repay the monies she received, the Court finds restitution to be in order.

The Estate's second defense concerns the decedent's capacity to contract at the time the oral agreement was purportedly reached between the parties. The Estate seems to premise this argument on the Claimant's own testimony. In her deposition, the Claimant had stated that the decedent was not capable of taking care of her business affairs. However, this belief was apparently based on the decedent's alleged alcohol addiction.

Initially, the Court was somewhat surprised at the ease with which the Estate attacked contractual capacity, considering the possible ramifications such a deficiency could have had on the validity of the Will. However, the Court does recognize that with the admittance of the decedent's testament to probate, the issue of capacity in regards to this instrument is no longer in dispute.

■ A review of the evidence reveals insufficient proof to establish that the decedent lacked capacity to contract with the Claimant when their agreement was achieved. The question of capacity in this case revolves around that of alcohol abuse. It is therefore difficult to ascertain exactly when the decedent possessed or lacked capacity to contract. While the testimony of the Claimant asserts that the decedent was incapable of conducting business affairs, this assertion seemed to be based on the decedent's drinking problem. Such an impediment is usually accompanied by periods of sobriety which would permit a party to contract on their own behalf Therefore, the Court is not convinced that the decedent lacked the requisite capacity to contract with the Claimant. Regardless of this decision, the Claimant would still be entitled to restitution even if

51

the decedent were deemed to have lacked capacity. Restatement of Restitution § 47 cmt. b (1936).

Finally, the Estate points to the gratuitous nature of the disbursements, maintaining that they were meant as gifts. The existence of a sibling relationship is not per se sufficient to constitute the presumption that services performed by one for the other was gratuitous, unless they lived together and thereby created the family relation. *In re Estate of Joseph*, 3 V.I. 207, 210, 141 F. Supp. 865, 866 (D. VI 1956); *See* 66 Am. Jur. 2d, RESTITUTION AND IMPLIED CONTRACTS § 53 (1973). The party benefitted must do some act from which his assent to pay for the service may be fairly inferred if he is to be bound to pay. *Joseph*, 3 V.I. at 211, 141 F. Supp. at 866.

In *Joseph*, the appellant maintained that he had paid cash for his sister's room and board, but had obtained no receipts. *Joseph*, 3 V.I. at 209, 141 F. Supp. at 865-866. His failure to assert a claim for these funds until after his sister's demise was weighed heavily against him by the Court. *Id.* at 211, 141 F. Supp. at 866. Similarly, the Claimant in this matter also waited until the death of the decedent to assert her claim. However, the factual scenario of the *Joseph* case can easily be distinguished from that which exists presently. The appellant in *Joseph* had no corroborating evidence to show he made the rental payments, nor could he establish the amount he had allegedly paid. *Joseph*, 3 V.I. at 211, 141 F. Supp. at 866. He further admitted on his own accord that he had never asked his sister to repay him for the rent. *Id.* at 209, 141 F. Supp. at 866.

■ In the current case, the Claimant produced canceled checks in corroboration of her claim. Additional support was presented in the form of a notebook which chronicled each such check extended for the benefit of the decedent. The mere act of maintaining a notebook for the sole purpose of tracking the care provided for her sister leads this Court to find that the intent was not gratuitous, but that the Claimant expected something in return. Even the testament itself spoke of the "agreement" between the parties.

## C. Statute of Limitations

Though neither party has discussed the statute of limitations, the Court is cognizant that it may not allow a creditor's claim barred by this time restriction. V.I. Code Ann. tit. 15, § 395 (1996). As a

general rule, the statute which prescribes the time to sue upon contracts, obligations or liabilities not founded upon written instruments shall govern an action upon an implied or quasi-contract. 66 Am. Jur. 2d, RESTITUTION AND IMPLIED CONTRACTS § 154 (1973). In the Virgin Islands, an action upon a contract must commence within six years after the cause of action has accrued. V.I. Code Ann. tit. 5, § 31(3)(A) (1997).

■ A contractual breach gives rise to a claim for damages, and may even give rise to other remedies. RESTATEMENT (SECOND) OF CONTRACTS§ 236 cmt. a (1979). In this instance, the Claimant could not recall exactly when she realized the decedent intended not to honor their agreement. However, the evidence does establish that funds were provided for the decedent's benefit as recently as November of 1990. Thus, it is the conclusion of the Court that a breach in the contract could have occurred no earlier than this date. As the Claimant submitted her current claim against the Estate in 1994, the action is timely filed.

## III. CONCLUSION

To receive judicial validation of a claim previously rejected by an executor, some competent or satisfactory evidence other than the testimony of the claimant must be presented to the Court for consideration. In the current case, the Claimant produced copies of canceled checks she had provided for the benefit of the decedent. This evidence was not only deemed satisfactory, but it was also found to partially corroborate the testimony of the Claimant. After a careful inspection of all the evidence as a whole, the Court concluded that $17,778.54 of the claim against the Estate should be allowed.

Three arguments were raised in support of the Estate's decision to refuse this claim. Each of these defenses were addressed by the Court and determined to be inapplicable. It was further held that this action was filed within the statute of limitations. As such, the Court shall grant a partial allowance of $17,778.54 of the Claimant's claim.