**FILED**
February 12, 2021
ST-2010-PB-00073
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

|  |  |
|---|---|
| IN THE MATTER OF THE ESTATE OF: | ) )  **PROBATE NO. ST-2010-PB-00073** |
| CELESTINA L. THOMAS, <br> deceased. | ) ) ) ) ) |

Cite as: 2021 VI Super 17U

**MEMORANDUM DECISION**

**CARR, H.,** *Magistrate Judge*

¶1    **THIS MATTER** is before the Court on a creditor's claim originally submitted by Administratrix Angela O-Heskey Peters (hereinafter "Petitioner") on August 8, 2014, and then refiled multiple times, with revisions and increases, over the next several years, culminating in a claim submitted on January 29, 2021, in the amount of $379,327.03. The Court finds that it must relate the tortuous path this claim has taken over the years before denying same in part and granting in part, as reasoned below.

**BACKGROUND**

¶2    The above-named decedent died on June 18, 2008. Probate of her estate was initiated on August 6, 2010, and Letters of Administration were issued to Petitioner, one of three heirs of the estate, on December 11, 2012. According to the Verified Inventory filed on August 6, 2010, the estate's assets consist solely of Parcel No. 4A-4 Estate Anna's Retreat, St. Thomas, U.S. Virgin Islands.

¶3    At the time of the decedent's death, Petitioner was in the middle of building a house on the previously unimproved land of Parcel No. 4A-4, having begun construction in approximately 2005 or 2006. The Court can chart the course of the construction both through the decedent's submitted documentation and through the V.I. Government Real Property Tax Bills issued for the parcel over the years: before 2006, the parcel was repeatedly valued at $15,368.00, while by 2008 its value had jumped to $136,200.00 and by 2013 it had increased again to $250,400.00, where it held steady for several years before losing value between 2017 and 2018. The parcel is now valued at $206,900.00, as of its 2020 tax bill.

¶4    The Court is not privy to the precise nature of the understanding between the decedent and Petitioner regarding the construction of the intended dwelling, but it notes the following facts: first, that Petitioner appears to have paid for at least the bulk of the construction costs of the house, as reflected in the documentation included in her claim; and second, that the Court has been presented with no proof, written or otherwise, regarding whether the decedent ever intended to reimburse

Petitioner for her expenditures. The decedent left no testamentary instrument of any kind, so the Court cannot know whether she wished for Petitioner to make use of or acquire title to the land and house upon its completion. Upon her death, however, the decedent remained the sole and proper titleholder of Parcel No. 4A-4.

¶5 After the decedent's death in 2008, Petitioner continued to use her own funds in the construction of the house on the estate's property, both before and after filing the instant probate matter August 6, 2010. Upon receiving Letters of Administration on December 11, 2012, Petitioner had Notice to Creditors and Debtors posted and published in accordance with law, directing all those with claims against the estate to make said claims known to Petitioner. No claims were submitted.

¶6 Nearly twenty months later, and just before the September 15, 2014 hearing on the Final Account was held, Petitioner filed her own creditor's claim for the sum of $242,500.00 on August 8, 2014. The claim indicated that the amount represented "payment of real estate property taxes, water and power authority bills, Innovative telephone bills and additional receipts of expenses associated with building and maintaining Parcel No. 4A-4", further stating that the listed sums "were paid during the lifetime of the decedent and continue[d] during [Petitioner's] tenure as the administratrix of the estate." Soon after filing her claim, Petitioner submitted an Informative Motion on September 18, 2014, advising the Court that she would not be seeking an award of Administratrix's fees for service performed in administering the decedent's estate.

¶7 At the September 15, 2014 Final Account hearing, the Court rejected Petitioner's claim without prejudice, explaining that the hundreds of pages of unorganized receipts, bills, invoices, quotes, and other documents that constituted Petitioner's claim were entirely incomprehensible. The Court directed Petitioner to submit an organized claim, with stated categories from which it could decipher the particular expenses documented.

¶8 Subsequently, on October 24, 2014, Petitioner resubmitted her claim in two bound volumes, with an increased amount claimed of $267,980.66. However, the Court again found Petitioner's claim to be too disorganized to properly examine or evaluate. The Court therefore issued an Order on November 25, 2014, making the following demands of Petitioner:

1. Petitioner's claim must be divided into two categories: before and after Decedent's death. If Petitioner is claiming expenses before Decedent's death, she must provide the factual grounds upon which she claims reimbursement. Otherwise, expenses paid before Decedent's death will be denied outright.

2. The particular expense for which Petitioner claims reimbursement must be identified and placed in the appropriate identifiable category, in chronological order, as Petitioner can claim only those expenses that have supporting receipts or other documents that show payment thereof by Petitioner. What Petitioner has done in her bound volume is to provide the Court with a "Table of Contents", without identifying the particular expenses, with specificity, for

which a receipt or other evidence of payment can be found in the bound volumes themselves.

3. Expenses related to improvements as opposed to repair and maintenance of Parcel No. 4A-4 Estate Anna's Retreat must be separated. The exact nature of the repair or improvement must be explained. The Court should not have to review the receipts themselves to determine the nature of the repair work or improvement being claimed by the Petitioner, except to verify that the expense was indeed incurred and paid.

4. Finally, if Petitioner is claiming reimbursement of improvements she made to the property, then she must identify the legal basis or authority upon which she made this improvement without prior written authority from the Court.

¶9   After entry of the Court's Order, the Court received no further filings in the instant matter for over two years. On July 24, 2017, Petitioner finally filed a revised creditor's claim, again in two volumes, but with an increased sum of $334,309.64. As the Court requested, the Petitioner separated the two volumes into those sums expended prior to the decedent's death and those following it. She also further divided the expenses within each volume by category, such as "utilities", "telephone", and "supplies, materials and repairs". However, she once again failed to provide any factual grounds upon which she claimed reimbursement for expenses paid before the decedent's death. She also failed to identify any legal basis or authority upon which she relied in making improvements to the estate after the decedent's death without prior written authority from this Court.

¶10   On January 22, 2021, the Law Offices of Pedro K. Williams (Pedro K. Williams, Esq., as counsel) filed a Notice of Appearance, and Petitioner filed a Notice of Creditor's Claim in the sum of $379,327.03. The Notice also stated that the July 24, 2017 claim was incorporated therein. However, the Notice included no receipts, bills, or other evidence representing the expenses increasing the claim from $334,309.64 to $379,327.03. Rather, it included only a single-page exhibit list stating that an additional total of $49,017.39[1] had been spent in various categories of expenses. On January 29, 2021, a single-page creditor's claim was filed, which simply reiterated the claim of $379,327.03 but again included no attachments or evidence of such additional expenditures. At present, there have been no further filings in this matter, and as the matter came on for a Final Account hearing on September 15, 2014 and all closing documents have been filed, the instant claim is the only impediment preventing the Court from closing out this matter. Upon close consideration, the Court will grant in part and deny in part Petitioner's claim for the reasons that follow.

---

[1] The Court cannot account for the total of $49,017.39 reached by Petitioner in her most recent claim; the difference between the previous claim of $334,309.64 and the new claim of $379,327.03 equals an addition of $45,017.39, not $49,017.39. The Court will therefore hereinafter refer to the additional claim as $45,017.39, not $49,017.39.

## EXPENSES INCURRED PRIOR TO THE DECEDENT'S DEATH

¶11    In her July 24, 2017 claim, as explained above, Petitioner divided her purported expenses into two volumes, with one containing expenses incurred prior to the death of the decedent and the other containing expenses incurred after same. Volume 1, containing expenses incurred prior to the decedent's death, includes an exhibit list showing that the total amount of expenses therein equals $200,757.43. The vast majority of the compensation requested for pre-death expenses – $197,322.52 – is categorized as "supplies, materials and repairs", apparently for the construction of Parcel No. 4A-4. The remaining $3,434.91 is divided among "utilities", "telephone", "landscaping (yard cleaning)", and "license and permits" for Parcel No. 4A-4.

### 1.  Insufficient Proof of Claim

¶12    As previously stated, the Court's November 25, 2014 Order demanded that, "[i]f Petitioner is claiming expenses before Decedent's death, she must provide the factual grounds upon which she claims reimbursement. Otherwise, expenses paid before Decedent's death will be denied outright." In no filing submitted to date has Petitioner provided any factual grounds for claiming expenses incurred prior to the Decedent's death. As a result of such failure, the Court sees no reason not to deny all pre-death expenses claimed by Petitioner.

¶13    However, even were the Court to consider the expenses on their merits, it finds that Petitioner would still be barred from collecting on all pre-death expenses. Without any factual grounds providing context or reasoning for Petitioner's claim for such expenses, the Court is left with only two reasonable possibilities: that the expenses were gratuitous, given by a daughter to her elderly mother with no expectation of reimbursement, or that the expenses were incurred under some contract, express or implied, by which the decedent would eventually repay Petitioner in some way for her expenditures. In either event, Petitioner is now barred from collecting on such expenses.

### 2.  Gratuitous Expenditures

It is well settled that no man can do another an unsolicited kindness and make it a matter of claim against him; and it makes no difference whether the act was done from mere good-will or in the expectation of compensation. Unless the party benefitted has done some act from which his assent to pay for the service may be fairly inferred, he is not bound to pay.

*In re Estate of Joseph*, 3 V.I. 207, 211, 141 F.Supp. 865, 866 (D. VI 1956).

¶14    If Petitioner's expenditures made prior to the decedent's death were gratuitous in nature, that is, for the benefit of the decedent with no promise or agreement of reimbursement, then she has no claim upon the decedent's estate for compensation. *Id.* The Virgin Islands District Court has found that the existence of a familial relationship is not alone sufficient to form the presumption that services performed or expenses paid by one family member on behalf of another are gratuitous. *Joseph*, 3 V.I. at 210, 141 F.Supp. at 866. However, the familial relationship does weigh substantially in favor of gratuitous giving, as it is hardly unusual for an adult child to financially support her elderly mother without any expectation of reimbursement.

¶15    Additionally, the Court must also observe the *absence* of evidence to the contrary; Petitioner has submitted no evidence, despite a direct order from the Court to do so, showing any grounds by which she expected to be compensated for providing financial assistance to the decedent during her lifetime.  The Court has received no written instrument suggesting a contract or understanding between the two women, no showing of partial repayment evidencing an intent to eventually repay the balance, and no testimony of an oral promise or guarantee made at any time.  Of particular weight to the Court is the fact that Petitioner's submitted expenditures date back to at least 1997, showing that she was providing the decedent with financial help for at least eleven years prior to her death.  If there was any intention on the decedent's part to repay such aid, surely she would have made some effort on that front during such an extended period of time.

¶16    If, alternatively, the decedent intended to repay Petitioner for building a house on the previously unimproved Parcel No. 4A-4 by transferring or leaving her title to the property, she had several years to do so prior to her death.  Yet not only did the decedent fail to transfer title to the property to Petitioner during her lifetime or draft any testamentary instrument recompensing Petitioner after her death, but Petitioner has provided no evidence whatsoever that the decedent ever saw her daughter's financial help as anything but a gift.  Without any evidence to the contrary, therefore, the Court finds it reasonable to assume that Petitioner's expenses made over a decade or more for her mother's benefit were gratuitous in nature and therefore cannot be claimed against the decedent's estate.

### 3.   Statute of Limitations on Claims Under Contracts

¶17    While the Court therefore finds it likely that the expenses made by Petitioner prior to the decedent's death were gratuitous in nature, the alternative is that they were made under a contract, express or implied, upon which Petitioner relied in expectation of some form of repayment for her expenditures on the decedent's behalf.  While the total lack of any evidence or testimony to such effect strongly weighs against the existence of a contract between Petitioner and the decedent, the Court does observe that the very fact that Petitioner maintained such precise and voluminous records of her expenses suggests that she might have expected to collect upon same at some point in the future.  *See In re Estate of McConnell*, 42 V.I. 43, 52 (Terr. Ct. 2000) ("The mere act of maintaining a notebook for the sole purpose of tracking the [checks paid by Claimant] for her sister leads this Court to find that the intent was not gratuitous, but that the Claimant expected something in return.")  If, however, the Petitioner was under reliance upon any contract made with the decedent, her claim for pre-death expenses is wholly barred by the statute of limitations, as shown below.

¶18    Title 15, § 392 of the Virgin Islands Code provides that, "[u]ntil the administration has been completed, a claim against the estate not barred by the statute of limitations may be presented, allowed, and paid out…."  "No claim shall be allowed ... which is barred by the statute of limitations." *Chas. H. Steffey v. Estate of Maurice Petion Savain*, 15 V.I. 260, 265 (V.I. 1978) (quoting V.I. CODE ANN. tit. 15, § 395).  The time for commencement of an action upon a contract is six years. V.I. CODE ANN. tit. 5, § 31(3)(A).  "Before deciding whether the claim is barred by the six-year statute of limitations for contracts, the date on which the claim accrued must be determined.  For, it is from that date that [the] statute of limitations [begins] to run." *In re Estate*

*of Vanderpool*, Super. Ct. Prob. No. 80/2004, __ V.I. __, 2010 V.I. LEXIS 113, at *4-5 (V.I. Dec. 30, 2010).

¶19    In this particular case, the calculation of whether the six-year statute of limitations has expired is easy. The very last date upon which Petitioner's claim against the decedent for expenses paid during her lifetime could have accrued was the date of the decedent's death: June 18, 2008. Petitioner's original creditor's claim was not filed until August 8, 2014, nearly six years and two months after the decedent's death. Therefore, any claim made upon a contract between Petitioner and the decedent before her death is automatically out of the statutory limits. Further, the Court notes that Petitioner had every opportunity to submit her claim on an earlier date; she was appointed Administratrix of the estate on December 11, 2012 and posted the Notice to Creditors and Debtors that same month, directing all those with claims against the estate to make said claims known to Petitioner. Yet she did not submit her own claim until over a year and a half later.

¶20    The Court therefore finds that, in any circumstance, Petitioner is wholly barred from collecting upon any claims made for expenses incurred prior to the decedent's death. Therefore, Volume 1 of Petitioner's July 24, 2017 Revised Creditor's Claim, requesting $200,757.43 in pre-death expenditures, will be denied in its entirety and deducted from Petitioner's total requested claim.

## EXPENSES INCURRED FOLLOWING THE DECEDENT'S DEATH

¶21    Volume 2 of Petitioner's July 24, 2017 revised creditor's claim, according to the accompanying Notice of Filing, contains expenditures incurred by Petitioner "for building and upkeep of decedent's real property after the date of death of the decedent", totaling $ 133,552.21 Volume 2's exhibit list is, like that of Volume 1, divided into categories, including "utilities", "telephone", "landscaping (yard cleaning)", "license and permits", "supplies, materials and repairs", "security", "property tax", "postage", "travel expenses", "professional fees", and "advertisement". On January 29, 2021, Petitioner submitted a one-page creditor's claim, adopting the July 24, 2017 revised creditor's claim therein but adding on additional, more recent expenses "for the construction and upkeep" of Parcel No. 4A-4, for a new total claimed of $379,327.03.

### 1. Insufficient Proof of Claim

¶22    Virgin Islands caselaw dictates that "claims against an estate that are not corroborated by evidence other than a claimant's testimony will be denied." *Jackman v. Estate of Pitterson,* 335 Fed. Appx. 255, 256 (3d. Cir. 2009); *see, e.g.*, *In re Estate of Erikson*, 11 V.I. 30 (D.V.I. 1974); *In re Estate of Dennis*, 11 V.I. 18 (D.V.I. 1974). No creditor's claim will be allowed by the court except where there is "…some competent or satisfactory evidence other than the testimony of the claimant." *Jackman* at 256.

¶23    In this particular matter, the Court has previously directed Petitioner on this precise topic. The Court's November 25, 2014 Order instructed that each "particular expense for which Petitioner claims reimbursement must be identified and placed in the appropriate identifiable

category, in chronological order, as *Petitioner can claim only those expenses that have supporting receipts or other documents* that show payment thereof by Petitioner." (Emphasis added).

### a. January 29, 2021 Claim

¶24    Despite the Court's explicit instruction, Petitioner has repeatedly failed to provide any evidence for many of her claims. The January 29, 2021 claim is the most glaring example of this deficiency. The claim consists primarily of a one-page claim and an exhibit list, much like those in Volumes 1 and 2 described above, showing categories of additional expenses incurred after submission of the July 24, 2017 revised creditor's claim, totaling an additional $45,017.39 in recent expenses. However, the claim not accompanied by *any* evidence of Petitioner's expenses. Unlike the previous volumes of expenses, there was not a single receipt, invoice, etc. to support Petitioner's January 29, 2021 claim. For lack of any evidence on which this Court might rely in considering the claimed expenditures, the Court will deny, in its entirety, the additional $45,017.39 claimed in the January 29, 2021 claim.

### b. Volume 2 of July 24, 2017 Revised Claim

¶25    Petitioner likewise failed to provide any supporting evidence for many of the expenses claimed in Volume 2 of her July 24, 2017 claim. As stated above, the Court had found her two previous submissions of claims to be too disorganized and chaotic to consider, so it ordered Petitioner to organize her payments by date and by category. Petitioner's July 24, 2017 volumes were far more comprehensible and organized than their predecessors, but upon examination, the Court noted that Volume 2 only included supporting documentation for the first three of the eleven categories of expenses named in its exhibit list. While Exhibits B through D, entitled "utilities", "telephone", and "landscaping (yard cleaning)", respectively, all have corresponding sections later in the volume with related documentation, Exhibits E through L have no corresponding evidence included. While the Court at first thought that there might be a missing third volume, Petitioner's Notice of Filing named and described only Volumes 1 and 2. The Court must therefore deny all expenses requested in Exhibits E through L as listed in Volume 2's exhibit list (totaling $112,161.56) for lack of any substantiating evidence.

¶26    After all of the above deficiencies, the Court is left to consider only those claims made for expenses paid by Petitioner after the decedent's death *and* supported by direct evidence. This leaves only Exhibits B, C, and D of Volume 2 of Petitioner's July 24, 2017 claim. The Court will now examine each exhibit separately.

### i.    Volume 2, Exhibit B: Utilities

¶27    Volume 2, Exhibit B consists solely of Virgin Islands Water and Power Authority (WAPA) bills and receipts paid by the Petitioner for Parcel No. 4A-4. The first two pages of the Exhibit include a list of dates and amounts of all bills to follow, totaling $5267.99. Upon thorough examination of the included bills and receipts, the Court finds that Petitioner included duplicates of several bills in her accounting. The correct bills and amounts for which the Court can award Petitioner compensation are as follows:

| DATE OF BILL | AMOUNT |
| --- | --- |
| 10/18/2011 | $ 80.51 |
| 11/16/2011 | $ 230.85 |
| 01/18/2012 | $ 130.89 |
| 06/14/2012 | $ 220.78 |
| 10/15/2012 | $ 146.71 |
| 09/17/2012 | $ 152.44 |
| 07/17/2012 | $ 132.37 |
| 09/04/2012 | $ 126.85 |
| 10/14/2009 | $ 29.73 |
| 05/06/2010 | $ 23.74 |
| 02/16/2010 | $ 37.86 |
| 03/12/2010 | $ 39.77 |
| 08/17/2009 | $ 28.62 |
| 05/14/2014 | $ 32.60 |
| 11/16/2009 | $ 38.00 |
| 09/16/2009 | $ 46.49 |
| 10/15/2010 | $ 48.70 |
| 01/19/2010 | $ 32.42 |
| 12/14/2009 | $ 37.40 |
| 01/19/2011 | $ 52.70 |
| 05/27/2010 | $ 32.60 |
| 12/27/2012 | $ 198.98 |
| 09/15/2014 | $ 146.80 |
| 11/19/2014 | $ 175.22 |
| 12/15/2014 | $ 172.29 |
| 01/23/2015 | $ 102.46 |
| 02/13/2015 | $ 121.64 |
| 03/13/2015 | $ 128.72 |
| 04/15/2016 | $ 236.03 |
| 04/20/2015 | $ 138.52 |

| DATE OF BILL (Continued) | AMOUNT |
|---|---|
| 05/20/2015 | $ 118.92 |
| 06/17/2015 | $ 111.47 |
| 08/03/2015 | $ 101.56 |
| 08/19/2015 | $ 115.37 |
| 10/16/2015 | $ 81.81 |
| 11/20/2015 | $ 89.87 |
| 01/22/2016 | $ 97.07 |
| 02/17/2016 | $ 70.77 |
| 04/08/2016 | $ 120.52 |
| 05/20/2016 | $ 27.25 |
| 06/17/2016 | $ 16.21 |
| 07/19/2016 | $ 93.56 |
| 08/19/2016 | $ 85.36 |
| 10/18/2016 | $ 149.78 |
| 12/02/2016 | $ 30.15 |
| 12/22/2016 | $ 94.43 |
| 01/25/2017 | $ 75.72 |
| 03/21/2017 | $ 53.68 |
| 05/05/2017[2] | $ 93.07 |
| **TOTAL:** | **$ 4,749.26** |

¶28    The Court will therefore award Petitioner a total of $4,749.26 for utilities paid for Parcel No. 4A-4 after the decedent's death.

### ii.    Volume 2, Exhibit C: Telephone

¶29    Volume 2, Exhibit C consists of invoices from Innovative telephone company.  The invoices, ranging from 2009 – 2017, show that Petitioner was paying for a bundle package of

---

[2] This final receipt was not included with the others in its proper section but was instead secured to the inside cover of Volume 2 of Petitioner's July 24, 2017 claim with a handwritten note next to it indicating that it was "to be added" to the whole.  The other two items taped to the same page – a $950.00 invoice from an accountant for the cost of preparing the volumes for Petitioner and a receipt for $200.00 made out to an Eugene Peters – will be rejected for failure to provide any evidence showing how those expenses benefited the estate.

telephone, internet, and cable television. The itemization of the expenses on the first pages of the Exhibit shows a total of $7,962.66.

¶30    The Court can find no reason to grant Petitioner any of the expenses requested in Exhibit C. From all of the documents submitted in this matter since 2012, the Court finds that Parcel No. 4A-4 has never been rented out or used in any way over the course of this matter, except by Petitioner herself when she has visited the island from her home in New York. The home has therefore remained empty since at least 2008, upon the decedent's death.

¶31    While there is some benefit in keeping services such as water and power running to an empty property for the purpose of emergencies, inspections, etc., it can find no rationalization for maintaining internet, television, and phone service to an unused property. If these superfluous services were utilized by anyone in the past decade, it was by Petitioner herself, as she is the only person authorized to access the property. Therefore, Petitioner's choice to maintain these services is either entirely self-serving or simply in poor judgment. In either case, the Court will reject the claim for repayment of these extraneous services in its totality.

### iii.    Volume 2, Exhibit D: Landscaping

¶32    Volume 2, Exhibit D consists of checks and receipts paid by Petitioner for services such as "gardening" and "yard cleaning" between 2006 and 2008. The itemization on the first page of the Exhibit lists a total expense of $8,160.00 for all included services. However, the Court finds that, despite Petitioner's assertion that Volume 2 consists only of expenses post-dating the decedent's death, many of the expenses included in Exhibit D are from before the decedent's death on June 18, 2008. The Court will therefore only consider those expenses paid after that date and substantiated by evidence. This leaves the following approved expenses:

| DATE OF BILL | AMOUNT |
| --- | --- |
| 08/26/2008 | $ 250.00 |
| 08,26/2008 | $ 200.00 |
| 01/12/2009 | $ 400.00 |
| 03/16/2009 | $ 200.00 |
| 08/18/2009 | $ 200.00 |
| 04/27/2010 | $ 200.00 |
| 04/30/2010 | $ 800.00 |
| 06/05/2010 | $ 200.00 |
| 03/15/2017 | $ 175.00 |
| 04/06/2017 | $ 150.00 |
| **TOTAL:** | **$ 2,775.00** |

¶33    The Court will therefore award Petitioner a total of $2,775.00 for expenses paid for landscaping and yard cleaning work performed at Parcel No. 4A-4 after the decedent's death. Together with the $4,749.26 awarded for utilities, this results in a total award of $7,524.26 on Petitioner's claim.

### CONCLUSION

¶34    The Court must take a final moment to emphasize the deep concerns it has with Petitioner's overall conduct in her role as Administratrix of this estate.  The Petitioner has acted extraordinarily freely with her money in making improvements to this estate, all without the Court's approval.  In its November 25, 2014 Order, the Court specifically demanded that, "if Petitioner is claiming reimbursement of improvements she made to the property, then she *must* identify the legal basis or authority upon which she made this improvement without prior written authority from the Court."  (Emphasis added).  Instead, Petitioner continued to pour her money into a property to which she has, as yet, no legal title, apparently anticipating that the Court would repay her for any and all expenditures made, however unwarranted.

¶35    In total, Petitioner's final claim of $379,327.03 is nearly twice the value of the entire estate, presently valued at $206,900.00.  The Court recognizes that much of Petitioner's claim was likely to the benefit of the estate and its heirs, but plenty of it was clearly extraneous or self-serving.  In failing to act unbiasedly in the best interests of the estate, Petitioner not only stalled the proceedings of this case for several years with a massive and disorganized claim but also encumbered the Court with the task of trying to make sense of the various errors and faults within the submitted documents.  The end result is a beleaguered estate, an overtaxed Court, and a claim which, due to its various defects, has been dramatically reduced from $379,327.03 to $7,524.26.  Had Petitioner heeded the direction and orders of the Court at any point in this matter, this estate might have been brought to a close in substantially better circumstances.  Nevertheless, it is now hereby

**ORDERED, ADJUDGED AND DECREED** that Petitioner's January 29, 2021 creditor's claim for $379,327.03 is **GRANTED** in part in the amount of **$7,524.26**; and it is

**ORDERED, ADJUDGED AND DECREED** that a copy of this Order shall be directed to the Law Offices of Pedro K. Williams (Pedro K. Williams, Esq.), counsel for Petitioner

DATED:  February 12, 2021

_____
**HENRY V. CARR, III**
Magistrate Judge
Of the Superior Court of the Virgin Islands

ATTEST:
**TAMARA CHARLES**
Clerk of the Court
By: _____
**EDOTCIA THOMAS-HODGE**
Senior Deputy Clerk  2 / 12 /2021